**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUKE BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CV-2290 ERW NAB |
| | ) | |
| TROY STEELE[1], | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Luke Brown's (Brown) Petition for Writ of

Habeas Corpus. [Doc. 1.] Respondent Troy Steele (Respondent) filed a response. [Doc. 9.]

Turner filed a Reply Brief. [Doc. 17.] This matter was referred to the undersigned United States

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). [Doc. 2.] For the reasons set forth below,

the undersigned recommends that the Petition be denied.

**I.      Background**

After a jury trial Brown was convicted of first-degree murder and armed criminal action.

(Resp't Ex. B at 52-53.)

The evidence presented at the trial, most favorable to the verdict, is as follows.[2] On the

evening of August 1, 2006, 24 year old Brown was drinking at a bar with friends. He exposed

himself through an open zipper of his pants, inviting several people to touch him. An older

---

[1] During the pendency of the Petition, Troy Steele became the warden at Eastern Reception, Diagnostic, and Correctional Center where Petitioner is incarcerated. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Troy Steele as the Respondent and remove Terry Russell's name.

[2] These facts are taken substantially from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision in Brown's appeal of the denial of his Rule 29.15 motion. (Resp't Ex. J at 1-2.) A state court's determination of a factual issue made by a State court shall be presumed to be correct. 28 U.S.C. § 2254.

patron at the bar advanced toward Brown, but Brown pushed him away and made it clear that he wanted nothing to do with the older man.  During the early hours of August 1, 2006, everyone left the bar.  Later that morning, the older man, the victim, was discovered in an alley with twenty-nine stab wounds on his upper torso.  Ten of the wounds were to the victim's head and face, with two wounds going into each eye socket and a cut that sliced victim's throat down to his spine.  An anonymous caller told police that Brown had picked up an individual and stabbed him.  Following his arrest, Brown waived his *Miranda* rights[3] and gave the police an oral statement, explaining that while giving the victim a ride, the victim made sexual advances toward him and Brown only defended himself.  The police found a knife buried in Brown's yard.  Brown testified at trial, claiming that the victim made sexual advances toward him and he only defended himself.

The trial court submitted jury instructions on self-defense, first-degree murder, second-degree murder, voluntary manslaughter, and armed criminal action.  After the jury found Brown guilty of first-degree murder and armed criminal action, the trial court sentenced Brown to a term of life imprisonment without the possibility of parole on the murder conviction and twenty-five years imprisonment on the armed criminal action conviction to be served consecutively.  (Resp't Ex. B at 59-62.)

Brown filed a direct appeal to the Missouri Court of Appeals which denied his request for relief.  (Resp't Exs. C, E.)  Brown then filed an amended Rule 29.15 Motion for post-conviction relief, which was denied after an evidentiary hearing.  (Resp't Exs. F at 1-30, G at 14-27, 34-41.)

---

[3] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court provided "concrete constitutional guidelines" for law enforcement agencies and courts that the admissibility in evidence of statements given during a custodial interrogation was dependent upon whether the police provided the suspect with the following four warnings:
(1) right to remain silent; (2) anything suspect says can be used against him in a court of law; (3) right to have an attorney present; and (4) if the suspect cannot afford an attorney, one will be appointed for him prior to questioning. *Dickerson v. United States*, 530 U.S. 428, 435 (2000).

Brown appealed the circuit court's denial of his Rule 29.15 Motion to the Missouri Court of Appeals. (Resp't Ex. H.) The Missouri Court of Appeals affirmed the circuit court's denial of the Rule 29.15 motion. (Resp't Ex. J.) Brown then filed a Petition for Writ of Habeas Corpus in this court on December 11, 2012. [Doc. 1.]

## II.     Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles

set forth by the Supreme Court at the time the state court renders its decision." *Id.* To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

### III.    Discussion

Brown presents six claims for review.  Brown contends that the trial court made three errors.  First, he states that the trial court erred in overruling his motion to suppress a videotaped statement that showed him invoking his right to remain silent.  Second, he asserts that the trial courted erred in overruling his objection to allowing the prosecutor to argue that he had never told police detectives he acted in self-defense.  Third, he asserts that the trial court erred in overruling his motion for judgment, because the state failed to prove the element of deliberation beyond a reasonable doubt, which is required for a first degree murder conviction.  Next, Brown presents two ineffective assistance of counsel claims.  Brown asserts that his trial counsel was ineffective for failing to convey the state's plea bargain offer and failing to advise him as to the benefit of accepting the state's plea bargain offer versus the merits of his argument of self-defense at trial.  Finally, Brown contends that prosecutorial misconduct occurred when the prosecution referred to facts not in evidence during closing argument.

Respondent contends that two of Brown's claims are procedurally defaulted and all of Brown's claims lack merit.  Brown states that if his claims are procedurally defaulted, he meets the cause and prejudice standard exception that allows review of his claims.

### A.    Trial Court Error

Brown presents two claims for review regarding his right to remain silent.  In his first claim for review, Brown contends that the trial court erred in overruling his motion to suppress, in part, a videotaped statement, because the jury was allowed to hear Brown asking the detective to stop the interview, which constituted an exercise of his right to remain silent.  Brown contends that the use of the video allowed the state to infer guilt.  In his second claim, he contends that the

trial court allowed the state to improperly refer to his post-*Miranda* silence during closing argument and rebuttal.

### 1.  Post-*Miranda* Silence

"[The] use for impeachment purposes of petitioner['s] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619 (1976).

### a.  Videotaped Statement

After his arrest, Brown received *Miranda* warnings from the St. Louis City police and then confessed to the crime.  Subsequently, the officers requested that the confession be videotaped and the following communication took place between Detective Jeffrey Stone and Brown.

> **Detective Stone**:  Detective Stone, DSN 3781, assigned to the homicide section.  The officer seated to my far left is Detective Thomas Carroll, DSN 3263.  He's also assigned to the homicide section.  The technician today running the equipment is going to be Robert Steckham, DSN 1753.  And the subject seated between Detective Carroll and I is a subject by the name of Luke Brown.  Mr. Brown, you've been previously advised of your rights and signed a rights waiver form, but I'm going to advise you of your constitutional rights again at this time.  All right?

> **Brown**:  All right.

> **Detective Stone**:  Okay.  You have the right to remain silent. Do you understand that right?

> **Brown**:  Yes.

> **Detective Stone**:  Anything you say can and will be used against you in a court of law.  Do you understand that right?

> **Brown**:  Yes.

**Detective Stone**:  You have the right to a lawyer and to have him present with you while you are being questioned.  Do you understand that right?

**Brown**:  Yes.

**Detective Stone**:  If you cannot afford a lawyer, one will be appointed for you before any questioning.  Do you understand that right?

**Brown**:  Yes.

**Detective Stone**:  If at any time while being interviewed should you decide to stop your statement, I will no longer question you and the interview will cease.  Do you understand that right?

**Brown**:  Yes.

**Detective Stone**:  Do you wish to waive or set these rights aside and make a statement in your own words at this time?

**Brown**:  Yes.

**Detective Stone**:  Okay.  The time is now 3:31 a.m.  Today's date is August 4, 2006.  We are presently in the police academy located at the 315 South Tucker, television studio.  Mr. Brown, do you see the videocassette recorder up there with the red lights on.

**Brown**:  Yes.

**Detective Stone**:  Show's it's running You see the red light?  Okay.  All right.  Do me a favor.  Just speak up for me here.  Can you give me your full name?

**Brown**:  Lucas Dean Brown.

**Detective Stone**:  Okay.  How old are you?

**Brown**:  Twenty-four.

**Detective Stone**:  Okay.  What is your date of birth?

**Brown**:  3-11-82.

**Detective Stone**:  Okay.  Where were you born at?

**Brown**:  Stanley, Wisconsin

**Detective Stone**:  Okay.  What is your occupation?

**Brown**:  Bindery.  In a factory.

**Detective Stone**:  Okay.  Are you married or single?

**Brown**:  Single.

**Detective Stone**:  Okay.  What is your home address?

**Brown**:  3849 Eiler.

**Detective Stone**:  Okay. Okay.  This is going to be in regards to a homicide which occurred on August the 8th, 2006 with the victim being a John Mitchell.  The incident occurred at 3430 McKean.  Mr. Brown, at this time in your own words why don't you tell us your involvement in this case.

**Brown**:  Well he was at the bar that we were all at and we were kind of poking fun at him.  And then the bar closed and I was driving down the road and I saw him and I picked him up.  And we just started driving around.  And then he kept trying to touch me, show me his stuff.  I can't do this right now.

**Detective Stone**:  What do you mean, you can't do this right now?

**Brown**:  I have to stop.

**Detective Stone**:  You want to stop?

**Brown**:  Yeah.  I just want to stop this right now for a little bit.  Is that possible?

**Detective Stone**:  Yeah, it's possible.  We can stop right now.  Want to stop?

**Brown**:  Yeah.

**Detective Stone**:  Okay.  We'll stop.  All right.  The time now is 3:33 am.  Still on August the 4th, 2006.

The videotape then ended.  (Resp't Ex. A at 21-24.)

At trial, a redacted portion of the video statement was played in open court during Detective Stone's direct examination.  (Resp't Ex. A at 432-34.)  The video concluded when Brown responds "yeah" to Detective Stone's first instance of asking him "you want to stop?"

The Eighth Circuit has recognized that, because the Supreme Court has not addressed the issue where a defendant stops an interrogation mid-statement, "the line between permissible references to postarrest silence for explanatory purposes and impermissible breaches of the implied *Miranda*-warning promise, therefore must emerge from case-by-case applications of *Doyle* over a period of time.  In the meantime, state courts have some leeway to reach reasonable judgments in this area."  *Dansby v. Hobbs*, 766 F.3d 809 (8th Cir. 2014).

In this case, the Missouri Court of Appeals held, based on *Doyle* and state law, that once the right to remain silent has been waived, the state is free to show the circumstances under which an interrogation was terminated.  (Resp't Ex. E at 3-4.)  The Missouri Court of Appeals found that the state did not create an inference of guilt by the dialogue shown and when the tape was stopped.  (Resp't Ex. E at 4.)  The undersigned finds that the Missouri Court of Appeals resolution of this claim did not result in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings.  "[N]ot every reference to an accused's post-*Miranda* warning silence violates due process."  *Dansby*, 766 F.3d at 820.  The trial court redacted the tape to show the contents of the interview and its conclusion.  By redacting the tape, the trial court reasonably managed entry of Brown's statement into evidence

and demonstrated a logical conclusion to the statement without making any inference regarding

Brown's right to remain silent.

> There is no doubt that a defendant may assert his right to remain silent at any time, subject to the continuing protections of *Doyle*. However courts have held that once a defendant chose to make a voluntary statement, the jury in order to have the benefit of all relevant evidence may well learn that the defendant terminated his statement by exercising his right to remain silent.

*Haberek v. Maloney*, 81 F.Supp.2d 202, 211 (D. Mass. 2000). In this case, the inclusion of

Brown's request to end the interview implied nothing more than the interview had concluded.

Therefore, the undersigned recommends that this claim be denied.

### b. Closing Argument

Next, Brown contends that the trial court erred in allowing the prosecutor to comment on

his post-arrest silence during closing argument. Brown asserts that some portions of the state's

closing argument and rebuttal improperly referenced his post-Miranda silence. The portions are

referenced below:

> "He never says self-defense to Detective Stone."

> …

> "He doesn't say self-defense until 14 months later. Yesterday. That's when he says self-defense. He doesn't say it to the police. It's yesterday that you hear self-defense."

> …

> "This is something 14 months later he gets up there on the stand and says it was self-defense."

> …

> "The truth is the truth.  You shouldn't, it shouldn't come out the first time 14 months later.  It should have come out to the detectives."

(Resp't Ex. A at 626-29, 650.)  Brown also states that the prosecutor did not distinguish between his written and oral statements and referred to Brown shutting down, which suggested that the jury should infer guilt from his silence.

> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.  But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements.  Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.  As to the subject matter of his statements, the defendant has not remained silent at all.

*Anderson v. Charles*, 447 U.S. 404, 408 (1980).  "Each of two inconsistent descriptions of events may be said to involve silence insofar as it omits facts included in the other version.  But *Doyle* does not require any such formalistic understanding of silence."  *Id.* at 409.

"The standard for determining whether habeas relief must be granted is whether the *Doyle* error had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  In § 2254 proceedings, a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the substantial and injurious effect standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the harmless beyond a reasonable doubt standard set forth in *Chapman v. California*, 386 U.S. 18 (1967)[4].  *See Fry v. Pillar*, 551 U.S. 112, 121-22 (2007).  "The *Brecht* standard reflects the view that a State is not to be put to the arduous task of retrying a defendant based on mere speculation that the defendant was prejudiced

---

[4] In *Chapman*, the U.S. Supreme Court held that before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.  *Chapman*, 386 U.S. 18, 24.

by trial error." *Davis v. Ayala*, 135 S.Ct. 2187, 2198 (2015). Under this standard, a petitioner is not entitled to habeas relief based on trial error unless he can establish that it resulted in actual prejudice. *Brecht*, 507 U.S. at 638.

The Missouri Court of Appeals found that it was proper for the prosecutor to comment in the closing argument upon Brown's failure to discuss self-defense with the police. If there was any error, it was harmless due to the overwhelming evidence of Brown's guilt. Assuming the prosecutor's statements violated *Doyle*, the undersigned finds that the *Doyle* violations did not have a substantial and injurious effect or influence in determining the jury's verdict. Brown has not demonstrated actual prejudice by the prosecutor's comments. The evidence of Brown's guilt is more than overwhelming. Brown admitting to picking up a stranger he had briefly met a few hours before and later stabbing him 29 times in his head and chest. Brown testified that he concealed evidence by burying the murder weapon and burning his clothes. Brown did not notify the authorities about the murder and was only implicated based on an anonymous tip. The jury heard testimony from Brown and watched Brown's video statement during trial and deliberations.

Based on the foregoing, the undersigned finds that the Court of Appeals' resolution of this claim did not result in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings. The undersigned recommends that this claim be denied.

## 2. Sufficiency of the Evidence

Next, Brown contends that the trial court erred in denying his motion for judgment of acquittal. Brown states that there was insufficient evidence of deliberation.

The Due Process Clause of the Fifth Amendment provides that no one can be deprived of liberty without due process of law and the Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. V, VI. "[These] provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *U.S. v. Gaudin*, 515 U.S. 506, 510 (1995).

"In the interests of finality and federalism, federal habeas courts are constrained by [AEDPA] to exercise only a limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). State law defines the elements of state law crimes. *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995). "A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by federal courts, as is any judgment affirming a criminal conviction." *Jackson v. Virginia*, 443 U.S. 307, 323 (1979).

A state prisoner is entitled to habeas corpus relief if the court finds that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324. The court must presume that the trier of fact resolved all conflicting inferences in favor of the state and the court must defer to that resolution. *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). In reviewing the sufficiency of the evidence, the court is "not permitted to conduct its own inquiry into witness credibility; that is a task reserved to the [fact finder]." *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000).

In Missouri, a person is guilty of first degree murder "if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020(1). State law

defines deliberation as "cool reflection for any length of time no matter how brief." Mo. Rev. Stat. § 562.002(3). "Deliberation is not a question of time- an instant is sufficient- and the reference to 'cool reflection' does not require that the defendant be detached or disinterested. Instead the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously, and not reflexively." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. 2013) (en banc). "Deliberation must ordinarily be proved through the circumstances surrounding the crime." *State v. Howery*, 427 S.W.3d 236, 246 (Mo. Ct. App. 2014). "While deliberation may be inferred, the State is required to prove deliberation beyond a reasonable doubt." *Id.* "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." *Id.* "Deliberation may be inferred when there is evidence of multiple wounds or repeated blows." *Id.*

Based on a review of the entire record, the undersigned finds that the Missouri Court of Appeals did not commit error when determining that there was sufficient evidence to support Brown's convictions. Brown testified that while driving the victim to an unknown destination, the victim forcefully grabbed his arm and pinned it against the seat and grabbed his testicles. (Resp't Ex. A at 530-31.) Brown then testified that he slammed on the brakes, turned into an alley, parked the car, grabbed his knife, and tried to stab the victim. (Resp't Ex. A at 534-37.) Next, according to his own testimony, Brown exits the car, opens the passenger door, and asks the victim to get out. (Resp't Ex. A at 537.) Brown testified that the victim lunged at him and wrapped his arms around him and Brown then begin stabbing the victim. (Resp't Ex. A at 538.) Brown testified that the victim's grip did not get lighter and he continued to stab the victim until the victim stopped "terrorizing" him. (Resp't Ex. A at 540-41.)

The undersigned finds that based on the trial testimony, including Brown's own testimony, it was reasonable for the jury to find beyond a reasonable doubt that the element of deliberation had been met. Based on the evidence presented at trial, the jury could disbelieve Brown's theory that the victim attacked him and he stabbed the victim 29 times in self-defense. It would not be unreasonable for the jury to disbelieve Brown's testimony that the victim continued to grab and attack Brown after being stabbed in the head, eyes, and chest, including a wound that sliced the victim's throat to the spine. Brown's self-defense theory was further undermined, because he had the opportunity to leave the scene, did not seek aid for the victim nor did he wait for the police to arrive. Brown fled the scene in his car, burned his clothes, and buried the weapon. The police received an anonymous tip that led them to Brown.

Therefore, the undersigned finds that the Missouri Court of Appeals' findings and conclusions were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The state court's findings are consistent with federal constitutional standards and the undersigned recommends that this claim be denied.

### B.     Ineffective Assistance of Counsel

In his fourth and fifth claims, Brown alleges ineffective assistance of counsel. Brown contends that his trial counsel was ineffective, because he failed to advise Brown on the relative merits of taking the state's plea bargain offer versus going to trial and presenting a self-defense theory. Brown contends that his attorney made his self-defense theory sound pretty good and did not accurately represent to him the relative merits of that claim when compared to the state's plea offer, which Brown states that his attorney did not tell him about. Brown states that he believed

the only option he had was to go to trial. Respondent asserts that Brown has procedurally defaulted his claim that his attorney did not convey the state's plea offer. Based on a careful review of the record as a whole, the Court finds that Brown's ineffective assistance of counsel claims are not defaulted and will now address the merits.[5]

"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. "Miscues and omissions are inevitable in any case

---

[5] Although Brown's appeal of the denial of his Rule 29.15 motion does not explicitly separate the arguments regarding whether trial counsel informed him of the plea and properly advised him of the merits of his self-defense theory at trial, all of the state courts addressed the issue and found trial counsel's testimony that he conveyed the plea offer to Brown as credible. Therefore, the undersigned will review the merits of both claims of ineffective assistance of counsel.

and there is no such thing as a perfect trial." *Medearis v. U.S.*, 469 F.Supp.779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694.

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. It is unnecessary, therefore, to prove that counsel's performance fell below an objective standard of reasonableness before determining the presence or absence of resulting prejudice. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). "In the context of pleas a defendant must show that outcome of the plea process would have been different with competent advice." *Id.*

In this case, Brown contends that his trial counsel failed to disclose a plea offer from the state and provide advice on the merits of his self-defense theory at trial. Brown and his trial counsel testified at the Rule 29.15 post-conviction evidentiary hearing. Brown's trial counsel testified that he conveyed the state's written plea offer to Brown and that Brown was not

interested in the offer. (Resp't Ex. F at 6-7.) Brown's counsel further testified that he thought Brown had a defensible case. (Resp't Ex. F. at 8-9.) Brown testified that his counsel did not convey the plea offer to him and made him think that his self-defense theory was a good strategy at trial. (Resp't Ex. F. at 18.) The state courts reviewing Brown's 29.15 claims found credible Brown's trial counsel's testimony that the plea offer was conveyed to Brown. (Resp't Ex. I at 3, Ex. J at 6.) In a habeas proceeding, a determination of a factual issue made by a state court is presumed to be correct. 28 U.S.C. § 2254(e). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* "The deference owed to the state trial court pursuant to § 2254(e)(1) include deference to its credibility determinations." *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008). "The state courts' finding that Brown's testimony that he did not know about the plea offer was not credible is entitled to deference by this court, and Brown has failed to show that this finding was incorrect by clear and convincing evidence.

The state courts also found that trial counsel's actions in proceeding to trial under a theory of self- defense did not fall below an objective standard of reasonableness. The undersigned agrees. "Reasonable performance of trial counsel includes an adequate investigation of the facts, consideration of viable theories, and development of evidence to support those theories." *Cagle v. Norris*, 474 F.3d 1090, 1097 (8th Cir. 2007). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the range of reasonable professional judgment." *Forrest v. Steele*, 764 F.3d 848, 853 (8th Cir. 2014). A reviewing court "must look beyond the distorting effects of hindsight." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995). "A claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice of trial strategy, even

when it later may be shown improvident." *Sherron*, 69 F.3d at 290 (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir.), *cert denied*, 474 U.S. 922 (1985)). The Sixth Amendment "does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 134 S.Ct. 10, 18 (2013).

Although in hindsight, it may appear that proceeding to trial on a self-defense theory in this case was not wise, it was a viable defense considering Brown admitted that he killed the victim. Brown has not met his burden to show that counsel's performance fell below an objective standard of reasonableness. Therefore, the undersigned recommends that Brown's claims of ineffective assistance of counsel be denied.

### C.     Prosecutorial Misconduct

Finally, Brown contends that the prosecutor engaged in prosecutorial misconduct during closing argument when the prosecutor referred to Brown and the victim having sexual relations although there was no evidence presented that the any sexual relations had occurred. Brown states that the prosecutor presented a motive- "that the murder was a result of a consensual homosexual encounter that led to [Brown] murdering [the victim] because of some shame and self-loathing"- completely unsupported by the evidence in the record. The Respondent contends that Brown's claim is procedurally defaulted and the court should decline to review this claim. Brown admits that this claim is procedurally defaulted and states that he can demonstrate cause and prejudice to overcome the default.

"Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercuts the State's ability to enforce its procedural rules." *Murray v. Carrier,* 477 U.S. 478, 491 (1986). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent

and adequate state procedural rule, federal habeas review is barred." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. 722 at 750.

To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray,* 477 U.S. at 488. For example, a defendant could demonstrate that the factual or legal basis for a claim was not reasonably available to counsel or some interference by officials made compliance impracticable. *Id* at 488. While ineffective assistance of counsel constitutes cause for a procedural default, the exhaustion doctrine generally requires that an ineffective assistance claim be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default in federal habeas proceedings. *Id*. at 489. An ineffective assistance of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). This procedural default may be excused if the prisoner can then satisfy the cause-and-prejudice standard with respect to that claim. *Id.*

Section 2254(i) provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). The Supreme Court has recognized a limited exception to this rule. In *Martinez v. Ryan*, the Supreme Court held:

> Where under state law, claims of ineffective assistance of
> trial counsel must be raised in an initial-review collateral
> proceeding, a procedural default will not bar a federal habeas

> court from hearing a substantial claim of ineffective
> assistance at trial, if in the initial review collateral
> proceeding, there was no counsel or counsel in that
> proceeding was ineffective.

*Martinez v. Ryan,* 132 S.Ct. 1309, 1320 (2012). The Eighth Circuit has held that *Martinez* does

not stand for the proposition that the failure to preserve claims on appeal from a post-conviction

proceeding can constitute cause. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citing

*Martinez*, 132 S.Ct. at 1320) (holding does not concern attorney errors in other kinds of

proceedings, including appeals from initial-review collateral proceedings).

In this case, Brown's prosecutorial misconduct claim is defaulted. Brown's counsel did

not object to the comments during the trial. Moreover, Brown neither presented a claim of

ineffective assistance of counsel for failure to object to the prosecutor's remarks nor did he raise

an independent claim of prosecutorial misconduct in state court. Further, the undersigned finds

that Brown has not established cause and prejudice to excuse the default for either claim. Even if

Brown's claims were not defaulted, the undersigned finds that Brown's prosecutorial misconduct

claim lacks merit.

The prosecutor's comments during closing argument were as follows:

> These are the only four things that have to be proven to you
> beyond a reasonable doubt, all right. And when you read
> through there[6] you will never find a motive element, all
> right? You can sit back there and discuss whether or not he
> really is gay, Luke Brown is gay and hates himself, whether
> or not there was a homosexual act going on in that car or
> whether or not he just hated John Mitchell and decided to kill
> him. You can talk about that all you want, okay. But it's not
> an element of the offense. You can decide it. Everybody
> probably had their opinion on it, all right. But that does not
> need to be proven beyond a reasonable doubt.
>
> …

---

[6] The prosecutor is referring to the jury instructions.

Did they go to Steak 'N Shake? Absolutely not. Why do we hear this whole story about Steak 'N Shake? Because he's got to have an hour in the car with him. They're not at Steak 'N Shake. There's no evidence of food in his stomach. They're in the car having relations over on McKean. And when somebody didn't get what – maybe he just didn't want to reciprocate, who knows? He decides to pull out the knife. Maybe he can't stand the fact that he's homosexual, all right. He pulls out a knife. You are making conscious decisions.

(Resp't Ex. A at 622-25.)

"As a general rule, prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render petitioner's conviction a denial of due process." *Louisell v. Dir. of Iowa Dept. of Corr.*, 178 F.3d 1019, 1023 (8th Cir. 1999). "To amount to a due process violation, improper remarks by a prosecutor must be so egregious that they fatally infect the proceedings and render a defendant's trial fundamentally unfair." *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002). "In evaluating whether a trial error resulted in prejudice of the defendant, [the court] consider[s] the cumulative effect of such misconduct, the strength of the properly admitted evidence of the defendant's guilt, and the curative actions taken by the trial court." *Louisell*, 178 F.3d at 1024. "A petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial –i.e., that absent the alleged impropriety the verdict probably would have been different." *Stringer,* 280 F.3d at 829.

The undersigned finds that Brown has not meet his burden to show a reasonable probability that the prosecutor's remarks affected the trial so much that the verdict probably would have been different absent the remarks. Regardless of the speculation of the prosecution

and defense counsel[7] regarding Brown's sexual activity with the victim, the evidence against Brown is overwhelming. Brown testified that he killed the victim so there was no dispute that he caused the victim's death. Brown testified that he stabbed the victim 29 times, left the victim's body in an alley, drove home, burned his clothes, and buried the murder weapon. It is hard to conceive that given all of the other evidence in the case, it was speculation about sexual activity that caused the jury to find Brown guilty of first degree murder and armed criminal action. The undersigned finds that Brown's prosecutorial misconduct claim is procedurally defaulted and lacks merit. The undersigned recommends that relief on this claim be denied.

## IV.    Conclusion

For the reasons set forth above, the undersigned recommends that Brown's claims for relief be denied. Because Brown has made no showing of a denial of a constitutional right, the undersigned does not recommend that a certificate of appealability be issued in this matter. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petition for Writ of Habeas Corpus be **DENIED**.  [Doc 1.]

**IT IS FURTHER RECOMMENDED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability be **DENIED**.

**IT IS HEREBY ORDERED** that the Clerk of Court shall substitute Respondent Troy Steele in place of Terry Russell as the Respondent.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of

---

[7] Defense counsel did not object to the prosecutor's comments. Instead, defense counsel rebutted the comments. (Resp't Ex. A at 637, 640-43.)

time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix, 897 F.2d 356* (8th Cir. 1990).

Dated this 18th day of February, 2016.

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE